**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARK DECICCO,

                                    Petitioner,

            - v -                                             Civ. No. 9:07-CV-1030
                                                                      (GLS/RFT)
ROBERT E. ERCOLE, *Superintendent,*
*Green Haven Correctional Facility*,

                                    Respondent.

**APPEARANCES:**                              **OF COUNSEL:**

MARK DECICCO
05-A-0017
Petitioner, *pro se*
Upstate Correctional Facility
P.O Box 2001
Malone, NY 12953

HON. ANDREW M. CUOMO                          FREDERICK H. WEN, ESQ.
New York State Attorney General               Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Petitioner Mark DeCicco brings this Petition for a Writ of *Habeas Corpus*, pursuant

to 28 U.S.C. § 2254, alleging that his present confinement in state custody is in violation of his

federal constitutional rights.  DeCicco asserts the following grounds in support of his Petition: (1)

ineffective assistance of trial counsel for failing to (a) file a notice of alibi or pursue an alibi defense,

(b) obtain a more specific date for the offenses alleged in the indictment, and (c) produce a copy of

a personal check purportedly paid from the victim's father to the Petitioner; (2) there was legally

insufficient evidence to support his conviction; (3) the verdict was against the weight of the evidence; (4) the sentence was excessive; and (5) the prosecutor violated *Brady*[1] by failing to produce the victim's father's checking account records. Dkt. No. 1, Pet.[2] For the reasons set forth below, this Court recommends that the Petition be **denied**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 21, 2004, Mark DeCicco was found guilty of Sodomy in the First Degree (N.Y. PENAL LAW § 130.50(2)), Sodomy in the Third Degree (N.Y. PENAL LAW § 130.40(2)),[3] and Endangering the Welfare of a Child (N.Y. PENAL LAW § 260.10(1)) pursuant to a jury trial held in the New York State Supreme Court, Ulster County. *See* State Court R. [hereinafter "R."], Ex. C, R. on Appeal, at R-1.[4] This conviction stems from the following summary of the testimony adduced at trial.

Sometime near the end of June 2003, M.S., a sixteen-year-old boy, was kicked out of his father's house. R., Trial Tr. at pp. 216-18. M.S. called his nineteen-year-old brother, B.S., to ask for help, and B.S. contacted some friends about temporary shelter for M.S. *Id.* at pp. 192 & 218. Petitioner, whom B.S. had met a month earlier, agreed to let M.S. stay with him in his one-bedroom apartment, located at 17 Down Street in the City of Kingston. *Id.* at pp. 192-94, 205-06, & 218-19.

---

[1] *See Brady v. Maryland*, 373 U.S. 83 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

[2] Because Petitioner was convicted of a sex offense and included the name of his minor victim in his Petition, the Honorable Gustave J. DiBianco, Retired United States Magistrate Judge, in accordance with New York's Civil Rights Law § 50-b, directed the Clerk of the Court to seal the Petition so as to maintain the confidentiality of the victim. To further preserve confidentiality, this Court will only refer to the victim by his initials.

[3] Since Petitioner's conviction, the crime of sodomy has been renamed to "criminal sexual act." *See* N.Y. PENAL LAW §§ 130.50 & 130.40 (amended 2003).

[4] The State Court Record was filed under seal to protect the victim's confidentiality.

B.S. knew that Petitioner, then thirty-six years old, regularly smoked marijuana and drank alcohol – specifically, Gatorade mixed with vodka – but felt comfortable letting his brother stay with Petitioner because "[his] brother . . . didn't drink or smoke marijuana . . . so even if it was . . . offered to him, he would most likely not accept it." *Id.* at pp. 194-97.

M.S. lived with Petitioner from July 7th until July 29th. *Id.* at p. 219. During that time, M.S. saw Petitioner regularly mix Gatorade with alcohol and store it in the refrigerator. *Id.* at pp. 229-30. M.S. testified that Petitioner offered him marijuana and alcohol "constantly," which B.S. also witnessed while visiting his brother. *Id.* at pp. 195-96 & 229-30. M.S. would sleep on Petitioner's couch in the living room, unless Petitioner had guests over; in those instances, because M.S. "would take up too much space in the living room on the couch[,]" Petitioner would ask M.S. to sleep in Petitioner's bed. *Id.* at pp. 221-22.

M.S. testified that he was asked to sleep in Petitioner's bed three times during the period he lived there. *Id.* at p. 222. On the first occurrence, Petitioner told M.S. that he was having company over, though M.S. claimed he never saw any guests. *Id.* at p. 223. M.S. said that he woke up later that night and found Petitioner sleeping in bed with him close enough that M.S. felt Petitioner's breath on his back. *Id.* at pp. 223-24. Because he did not feel comfortable, M.S. got up and slept in the living room for the rest of the night. *Id.* at p. 224. M.S. claimed that this occasion was the only time he smoked marijuana with the Petitioner, and that every other time the Petitioner offered it to M.S. he would refuse because he "didn't know what could happen if [he] fell asleep." *Id.* at p. 229. The second and third times M.S. slept in Petitioner's bed, he woke up and went into the living room as soon as Petitioner came into the bedroom. *Id.* at pp. 224-25. M.S. also testified that Petitioner came into the bathroom once when M.S. was showering and persistently asked, for about five

minutes, to see "how big" M.S. was, but M.S. refused.  *Id.* at pp. 225-28.

At about 2:30 or 3:00 p.m. on July 29, 2003, M.S. left his job at Dunkin Donuts early because he had a headache and returned to the Petitioner's apartment.  *Id.* at pp. 217 & 230-31. Petitioner was home, and when M.S. told Petitioner that he had a headache, Petitioner offered M.S. some aspirin.  *Id.* at p. 231.  Petitioner gave M.S. three white pills, two of them larger than the third, which he said were stronger than aspirin and would make his headache go away faster.  *Id.* at pp. 231 & 235-36.  Though M.S. did not ask for anything to drink to help him swallow the pills, Petitioner gave M.S. a Gatorade from the refrigerator.  *Id.* at pp. 231 & 236.  M.S. testified that he intended to lay down on the couch, but Petitioner told him that he was having company over and that M.S. would have to sleep in the bedroom again.  *Id.* at p. 232.

M.S. fell asleep around 5:00 or 6:00 p.m.  *Id.* at p. 233.  M.S. testified that later in the night he suddenly woke up and discovered that his boxers and shorts were pulled down and that Petitioner was kneeling between his legs, performing oral sex on him.  *Id.*  Petitioner did not respond when M.S. asked him what he was doing, and M.S. got up and left the apartment.  *Id.* at pp. 233-34.  M.S. went to a local mall and spent the night sleeping between two trucks parked near the loading dock. *Id.* at p. 234.

When the mall opened in the morning, M.S. ran into his friend J.D. and told him what had happened.  *Id.* at p. 235.  J.D. told M.S. that M.S. could stay with him and his family in Woodstock. *Id.*  Later in the day, M.S. returned to Petitioner's apartment to get his clothes, and gained access to the apartment by climbing through the window.  M.S. testified on cross-examination that Petitioner did not give M.S. a key to the apartment and had told M.S. to enter through the window when Petitioner was at work.  *Id.* at pp. 250-54.

M.S. stayed in Woodstock for about three weeks. *Id.* at pp. 235 & 245. During the last week of August 2003, M.S. moved to Family of Woodstock, a teen shelter, where he met with intake worker Susan Doerbecker, who referred him to the police. *Id.* at pp. 237, 263, & 265. M.S. met Detective Timothy Bowers of the Kingston Police Department at the police station and gave him a statement of the events. *Id.* at pp. 237-38 & 261-65. The police arrested Petitioner around 5:15 p.m. on August 25, 2003, and brought him to the police station. *Id.* at pp. 266 & 324-25.

Detective Bowers testified that, after Petitioner waived his Miranda rights at the police station, he asked Petitioner if anything of a sexual nature occurred between Petitioner and M.S. *Id.* at pp. 272-74. Petitioner answered that he and M.S. talked about penis size on the second night after M.S. moved in, and that he asked M.S., "How big are you?" and "grabbed [M.S.'s] penis to measure it against [his] wrist." *Id.* at pp. 274-75. Petitioner stated that they then "put them away and [] went to bed," but the next night Petitioner asked M.S. if he wanted to show Petitioner his penis again, to which M.S. said no. *Id.* at pp. 275-77. Petitioner also stated to Detective Bowers that he told M.S. that he was bisexual. *Id.* at p. 277. Detective Bowers asked Petitioner about the day that M.S. came home from work with a headache, and Petitioner claimed he was home and had given M.S. only half of an 800 mg prescription Ibuprofen, swallowed the other half himself, took a muscle relaxer, and went to bed. *Id.* at p. 278. He denied performing oral sex on M.S. that night. *Id.* at pp. 278-79. Later that same day, the police returned to Petitioner's apartment and seized a variety of prescription medications and a photograph of an unrelated nude boy. *Id.* at pp. 307-17; R., Suppression and Sandoval Hr'g, Tr., dated Oct. 19, 2004, at pp. 54-56. Petitioner's counsel successfully excluded the introduction of both the prescription medicine and the photograph into evidence. Trial Tr. at pp. 280-85 & 316-22; Suppression and Sandoval Hr'g Tr. at pp 58-61.

The Petitioner did not present any evidence in his case nor did he testify on his behalf. Trial Tr. at p. 331. Petitioner made a general motion to dismiss the indictment for legal insufficiency at the end of the prosecution's case, which the court immediately denied. *Id.* at p. 394. The jury convicted Petitioner on all counts, finding him guilty of First and Third Degree Sodomy and Endangering the Welfare of a Child. *Id.* at pp. 407-08.

After the verdict was read, the Petitioner stated on the record his dissatisfaction with the trial. Specifically, Petitioner stated that the trial judge signed a *subpoena duces tecum* for Petitioner's cell phone records, but he never received those records. *Id.* at pp. 416-19. Furthermore, Petitioner claimed he sent a proposed *subpoena duces tecum* to the trial court and to his counsel for M.S.'s father's checking account in order to obtain a "check that was supposedly sent [by M.S.'s father] to [Petitioner] which [he] cashed." *Id.* at pp. 416-17. Lastly, Petitioner claimed that there were other subpoenas he wanted to request of the court, but his counsel had neglected to do so, and that Petitioner previously requested to have his counsel dismissed, but the court denied that request as well. *Id.* The judge responded that the practice of the chambers is "not to respond directly to requests that [are] made by defendants when they were represented by counsel." *Id.* at p. 418. Petitioner was sentenced to a determinate term of fifteen years in prison on his First Degree Sodomy conviction, plus five years of post-release supervision; a concurrent indeterminate term of one and one-third to four years in prison on his Third Degree Sodomy conviction; and a concurrent determinate one-year prison term for Endangering the Welfare of a Child. R., Sentencing Hr'g, Tr., dated Dec. 20, 2004, at pp. 7-8.

Petitioner appealed the trial court's judgment to the New York State Appellate Division, Third Judicial Department, raising four claims: (1) his trial counsel was ineffective for failing to (a)

file a notice of alibi or pursue an alibi defense; and (b) obtain a more specific date for the offenses in the indictment; (2) his First Degree Sodomy conviction was based on legally insufficient evidence; (3) his First and Third Degree Sodomy convictions were against the weight of the evidence; and (4) the sentence was excessive. R., Ex. A, Pet'r Appellate Br. On March 1, 2007, the Third Department unanimously affirmed the judgment and conviction of the trial court. *See People v. DeCicco*, 830 N.Y.S.2d 837 (N.Y. App. Div, 3d Dep't 2007). Specifically, the Appellate Division found Petitioner's claim that his First Degree Sodomy conviction was based on legally insufficient evidence was not preserved for review because Petitioner failed to move to dismiss that count of the indictment on that ground. *Id.* at 838. Nevertheless, the court stated that, "were we to consider that argument, we would find it without merit." *Id.* The Appellate Division similarly rejected Petitioner's other claims by "find[ing] them equally without merit." *See id.* at 839. Petitioner's application for leave to appeal to the New York State Court of Appeals was denied on May 4, 2007. *See People v. DeCicco*, 869 N.E.2d 663 (N.Y. 2007).

On September 28, 2007, DeCicco filed the instant Federal *Habeas Corpus* Petition pursuant to 28 U.S.C. § 2254. In it, he raises the same four claims made before the Third Department. Furthermore, he raises for the first time two additional claims: (1) his trial counsel was ineffective for failing to produce a copy of a personal check from M.S.'s father; and (2) the prosecutor violated *Brady* by "failing to produce the *subpoena duces tecum* for [M.S's father's] checking account." *See* Pet. at pp. 4-5, 7, & Supp'l Pages 2-5 (emphasis added). Respondent concedes this Petition has been timely made. *See* Dkt. No. 9, Resp't Mem. of Law, at pp. 11-12.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238 (2d Cir. 2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant *habeas* relief: 1) Was the principle of Supreme Court case law relied upon in the *habeas* petition "clearly established" when the state court ruled? 2) If so, was the

state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### B. Claims Regarding a Personal Check From M.S.'s Father

Prior to seeking federal *habeas* relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect petitioner's rights.[5]  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  This exhaustion requirement recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).  Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law.  *Id.*  "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."  *Glover v. Bennett*, 1998 WL 278272, at *1 (N.D.N.Y. May 21, 1998) (quoting *Daye v. Attorney Gen. of New York*, 696 F.2d at 192).[6]

---

[5] 28 U.S.C. § 2254(b) and (c) provide, in part, as follows:

(b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

[6] Because the AEDPA's restriction on federal *habeas* power was premised upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's review standards apply only to federal claims
(continued...)

The writ of *habeas corpus* requires that petitioners "fairly presented" their claims to the state courts before the federal system can issue the writ. *See Jimenez v. Walker*, 458 F.3d 130, 148-49 (2d Cir. 2006); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (noting the exhaustion requirement, codified at 28 U.S.C. § 2254(b)(1), is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights.").

"In developing and refining the 'fairly present' standard, the Supreme Court has concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts." *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye v. Attorney Gen. of the State of New York*, 696 F.2d at 191; *Morales v. Miller*, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999). "Although the petitioner need not have cited 'book and verse on the federal constitution,' he must have articulated 'the substantial equivalent' of the federal *habeas* claim." *Colon v. Artuz*, 174 F. Supp. 2d 108, 114-15 (S.D.N.Y. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)); *see also Daye v. Attorney Gen. of New York*, 696 F.2d at 194. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye v. Attorney Gen. of New York*, 696 F.2d at 192; *Morales v. Miller*, 41 F. Supp. 2d at 374.

A petitioner may fairly present the constitutional nature of his claim by

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance

---

[6](...continued)

which have been actually adjudicated on the merits in the state court. *Washington v. Shriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). Accordingly, deference is not mandated under section 2254(d) if a state court decides the case on a procedural basis, rather than on the merits. *See Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).

on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of New York*, 696 F.2d at 194; *see also Smith v. Duncan*, 411 F.3d 340, 348 (2d Cir. 2005).

In the present case, the Respondent asserts that Petitioner has not properly exhausted four of his claims: 1) weight of the evidence; 2) excessive sentence; 3) ineffectiveness of trial counsel; and 4) *Brady* violations regarding M.S.'s father's check.  Resp't Mem. of Law at pp. 12-15.  In his direct appeal to the Appellate Division, Petitioner raised both a weight of the evidence claim and an excessive sentence claim.  *See* Ex. A, Pet'r Appellate Br., at pp. 11-13.  Respondent argues, however, that Petitioner raised these claims only in "state statutory and case law terms" instead of presenting a genuine issue of federal law.  *Id.* at p. 14.  This Court need not decide whether these two claims are exhausted because, as explained below, both claims are based solely on state law claims and are not cognizable in federal *habeas* petitions.  However, Petitioner's claim that his trial counsel was ineffective for failing to produce a copy of a check from M.S.'s father, and Petitioner's claim that the prosecutor violated *Brady* by failing to produce a check, were not presented to the state courts in any form and thus are unexhausted.  On August 17, 2009, Petitioner filed a Motion to Stay the Proceeding in order to present these unexhausted claims to the state courts through a motion to vacate his judgment of conviction pursuant to Section 440.10 of New York's Criminal Procedural Law.  Dkt. Nos. 22, Pet'r Motion To Stay & 24, Pet'r Reply.  By an Order, dated November 24, 2009, Petitioner's Motion was denied for lack of good cause and as unduly delaying final resolution of Petitioner's federal claims.  Dkt. No. 25.

Although a federal court may not grant a writ of *habeas corpus* on a claim that has not been exhausted, the court has  the discretion to deny such a petition.  *See* 28 U.S.C. § 2254(b)(2);  *see*

*also Marziale v. Walker*, 2000 WL 33767753, at *3 (N.D.N.Y. May 4, 2000).  Additionally, the

Supreme Court has held that when a "petitioner failed to exhaust state remedies and the court to

which the petitioner would be required to present his claims in order to meet the exhaustion

requirement would now find the claims procedurally barred," federal courts on *habeas* review must

also deem the claim procedurally defaulted. *Coleman v. Thompson*, 501 U.S. at 735 n.1 (quoted in

*Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003)).  In other words, "[a]n unexhausted claim that

can no longer be exhausted is deemed procedurally defaulted." *Andrews v. Downstate Corr.*

*Facility*, 2009 WL 3587280, at *2 (E.D.N.Y. Oct. 27, 2009) (citing *Aparicio v. Artuz*, 269 F.3d at

90).

New York law requires a state court to deny a motion to vacate a judgment based on a

constitutional violation when the defendant unjustifiably fails to argue the violation on direct appeal,

despite sufficient facts in the record.  N.Y. CRIM. PROC. LAW § 440.10(2)(c).[7]  Here, Petitioner's

claims that his trial counsel was ineffective for failing to produce a copy of a personal check from

the victim's father, and that the prosecution committed a *Brady* violation for failing to produce a

*subpoena duces tecum* for M.S.'s father's checking account, could and should have been brought

on direct appeal.  Petitioner's claims regarding this check and checking account were established

in the record, as the Petitioner himself went to great lengths to explicitly place his subpoena request

for M.S.'s father's checking account on the record immediately following the jury's verdict against

him. *See* Trial Tr. at pp. 416-17.  Petitioner has not offered a reason, and we see none, that suggests

Petitioner and his appellate counsel would have needed a new evidentiary hearing pursuant to a

---

[7] The purpose of this rule is to prevent Section 440.10 from "being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so." *People v. Cooks*, 491 N.E.2d 676, 678 (N.Y. 1986).

440.10 motion to develop these claims. Thus, this Court finds that these claims could have been raised on direct appeal. Petitioner cannot now file a second appeal with the Third Department as to these claims because a criminal defendant is "entitled to one (and only one) appeal" to the Appellate Division. *Aparicio v. Artuz*, 269 F.3d at 91. Therefore, these claims are deemed exhausted but procedurally barred for purposes of his *habeas* application. *Spence v. Superintendent Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Strogov v. Attorney Gen. of State of New York*, 191 F.3d 188, 193 (2d Cir. 1999) (failure to raise a claim based upon matters contained within record on direct review to Appellate Division constitutes procedural default of such claim); *Senor v. Greiner,* 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).

When a claim in a federal *habeas* petition is procedurally barred, it cannot be heard by the federal reviewing court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[8] *Coleman v. Thompson*, 501 U.S. at 750; *Ramirez v. Attorney Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (citing *Coleman*); *King v. Greiner*, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (stating the court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence").

To establish legal cause for his or her procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with New York's procedural rules.

---

[8] This final exception, however, is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994).

*Murray v. Carrier*, 477 U.S. at 488; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).  Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal.  *Murray v. Carrier*, 477 U.S. at 488.  Here, Petitioner has not demonstrated nor stated any fact that would support a finding of legal cause for his procedural default sufficient to meet this standard.  Because he cannot establish such cause, this Court need not decide whether he also suffered actual prejudice as to this claim because federal *habeas* relief on the basis of a procedurally defaulted claim is unavailable unless both cause and prejudice are demonstrated.  *See, e.g.*, *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (citing *Stepney*).  Moreover, Petitioner has not established that a fundamental miscarriage of justice would occur if the Court could not adjudicate his *Habeas* Petition such that Petitioner is actually innocent of the crimes he was convicted of.  Where there is no basis in the record for overlooking the procedural default, the barred claims are precluded from *habeas* review as well.  Therefore, this Court recommends that the Petitioner's claims that he was denied effective assistance of counsel from a failure to obtain a copy of a check from M.S.'s father given to the Petitioner, and that the prosecution committed a *Brady* violation for failing to produce M.S.'s father's checking account records, be **denied** as procedurally defaulted.

### C. Weight of the Evidence and Harsh and Excessive Sentence

Petitioner claims that the guilty verdicts for the First and Third Degree Sodomy convictions were against the weight of the evidence.  Pet. at p. 7.  This claim is not cognizable under federal *habeas* analysis because it alleges a violation of state law.  *See Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998); *Higgins v. Artus*, 2010 WL 3119510, at \*5 n.3 (N.D.N.Y. Aug. 6, 2010); *see*

*also Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15[5]."). Because Petitioner has not raised a claim alleging a violation of federal law, his weight of the evidence claim should be **denied**.

Petitioner also argues that his sentence was "harsh and excessive." Pet. at p. 7. When a petitioner's sentence is within the statutory range of the corresponding crime he was convicted of, no federal constitutional issue cognizable on *habeas* review is presented. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); *see also Garrett v. Smith*, 2006 WL 2265094, at *12 (E.D.N.Y. Aug. 8, 2006) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.") (quoting *White*). In New York, a conviction of Sodomy in the First Degree, which is classified as a class B violent felony, can range from a determinate prison sentence of five to twenty-five years. N.Y. PENAL LAW §§ 130.50(2) & 70.02(1)(a), 2(a) & (3)(a). Petitioner's aggregate fifteen-year prison sentence is within the range prescribed by New York State law. Thus, Petitioner's excessive sentence claim is not cognizable on *habeas* review and should be **denied**.

### D. Ineffective Assistance of Trial Counsel

DeCicco alleges that he received ineffective assistance from his trial counsel. Pet. at p. 5. Petitioner's ineffective assistance claim is focused on his trial counsel's alleged failure to: 1) file a notice of alibi or pursue an alibi defense; 2) obtain a more specific date for the offenses alleged in the indictment; and 3) produce a copy of a personal check that was allegedly given to Petitioner from M.S.'s father. As stated above, Petitioner's claim relating to a purported check from M.S.'s father

*-15-*

was raised for the first time in this instant Petition, and is deemed exhausted but procedurally barred.

His remaining claims have been adjudicated on the merits by the New York state courts. In Petitioner's direct appeal to the Third Department, the court stated it had "considered defendant's remaining arguments and [found] them equally without merit." *People v. DeCicco*, 830 N.Y.S.2d at 839. This statement is a sufficient demonstration that the Appellate Division adjudicated Petitioner's claims of ineffective assistance of counsel on the merits. *See, e.g.*, *Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001) (finding an appellate court's one-word decision that a *coram nobis* petition was "denied" constituted an "adjudication on the merits" because there was "no basis for believing that the Appellate Division rejected the claim on non-substantive grounds."). Therefore, because these claims have been adjudicated on the merits by a New York state court, they are analyzed under AEDPA's deferential standard of review. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003); *Sellan v. Kuhlman*, 261 F.3d at 311-12 (finding that when a state court rejects a claim on the merits, the "federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent") (internal citation and quotation marks omitted).

To establish a deprivation of a Sixth Amendment right to effective assistance of trial counsel, a petitioner must show that: (1) his attorney's performance was deficient such that it fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) this deficient performance prejudiced his defense. *Bell v. Cone*, 535 U.S. 685, 695 (2002) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F.

Supp. 2d 149, 157 (E.D.N.Y. 2003).[9]  Prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  In determining the reasonableness of counsel's conduct, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

First, Petitioner claims that his trial counsel was ineffective for failing to seek a more specific date for the alleged offenses.  Specifically, Petitioner's complaints stem from the inconsistency between M.S.'s initial contact with the police, where M.S. reported that the incident occurred on July 25, 2003, and the indictment, which states that the alleged acts occurred on or about July 29, 2003.  *See* R., Ex. A, Pet'r Appellate Br., at pp. 7-9 .  The record shows, however, that Petitioner's trial counsel did in fact seek and obtain a more specific date for the alleged offense.

At the arraignment, Petitioner's initial counsel, Daniel Gaffney, expressed his concern to the prosecution that "there may well be a typo in the indictment" due to the inconsistency between the stated incident dates, and he requested to have the date clarified.  R., Arraignment Hr'g, Tr., dated Oct. 16, 2003, at pp. 2-3.  Pursuant to this request, the prosecution submitted a discovery affirmation, similar to a bill of particulars, which repeated and firmly established the date stated in the indictment, July 29, 2003, as the date of the alleged incident.  R., Ex. C, Discovery Affirmation of Emmanuel C. Nneji, Esq., dated October 23, 2003.  During the suppression hearing, Stuart

---

[9] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'"  529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d at 309.

Borrero, Petitioner's subsequently obtained trial counsel, again noted the discrepancy between stated dates of the incident, and again requested a more definite date to which the incident allegedly occurred.  Suppression and Sandoval Hr'g Tr., dated Oct. 19, 2004, at pp. 57-58.  Thus, the Petitioner's claim that his trial counsel failed to obtain a more specific date for the alleged offenses is without merit because his counsel, in fact, specifically pointed out inconsistencies in the stated dates and forced the prosecution to submit a discovery affirmation that confirmed the indictment's date.  Furthermore, Petitioner's trial counsel attempted to impeach M.S. on cross-examination regarding the inconsistent statement.  *See* Trial Tr. at pp. 244-45.  Therefore, Petitioner cannot meet the first prong of *Strickland* – that his counsels' performances were deficient as objectively unreasonable – because his lawyers, in fact, did what the Petitioner claims they failed to do.  *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance.") (citations omitted).  The Appellate Division's rejection of this claim was neither contrary to, nor based on an unreasonable application of, federal law, and this Court recommends that this claim be **denied**.

Secondly, Petitioner claims that his attorneys were ineffective for failing to file a notice of alibi or pursue an alibi defense.  This Court has examined the record and finds this claim is likewise without merit.  As described above, Petitioner's initial attorney appeared at Petitioner's arraignment and asked for a clarification on the date of the incident listed on the indictment.  Arraignment Hr'g Tr. at pp. 2-3.  He also successfully requested a tolling of the notice of alibi deadline until the date discrepancy could be resolved, stating that he was prepared with an alibi for July 25th, but not for July 29th.  *Id.*  During the suppression hearings, Petitioner's subsequent attorney, Mr. Borrero, told the court that Petitioner wanted to present Randy Cook, who was incarcerated at the time in Ulster

*-18-*

County Jail, as an alibi witness, but that Mr. Borrero did not serve an alibi notice on the prosecution because, as he stated to the court, "based upon conversations between myself and my client, I had many reservations about doing so."  Suppression and Sandoval Hr'g Tr. at pp. 79-80.  Mr. Borrero also relayed to the court Petitioner's request for a *subpoena duces tecum* for Petitioner's own cell phone records, which Petitioner claimed would be alibi evidence.  *Id.* at pp. 70-71.  When pressed by the trial court to explain how these cell phone records would provide Petitioner with an alibi defense, however, Mr. Borrero explained that the records would purportedly show that M.S. was in Woodstock, New York, at the time of the alleged offenses, and that the evidence was not alibi evidence but would be used to impeach M.S. on the stand.  *Id.* at pp. 71-79.  The concession that the cell phone records were not alibi evidence was repeated by Petitioner's appellate counsel on his direct appeal to the Appellate Division.  *See* R., Ex. A, Pet'r Appellate Br., at p.6 ("[A]lthough not technically alibi evidence . . . .").

Petitioner cannot show his trial counsels' performance was objectively unreasonable. Petitioner admitted to the police, upon his arrest, that he was home the day of the alleged incident and gave M.S. prescription-strength Ibuprofen.  *See* Trial Tr. at pp. 277-79.  Counsel cannot be ineffective for failing to file a notice of alibi or pursue an alibi defense when doing so would be creating, in counsels' professional opinion, a false, fabricated alibi.  *See Shaw v. Artuz*, 2001 WL 1645933, at *1 (S.D.N.Y. Dec. 21, 2001) ("Counsel made a tactical decision not to call [alibi defense] witnesses . . . . [which] was well within the range of tactical strategy that is left to the professional judgment of defense counsel.") (citing *Strickland v. Washington*, 466 U.S. at 689). Petitioner's defense counsel could have reasonably decided that the jury would not have believed Petitioner's attempt to present an alibi through Randy Cook's testimony, especially considering

Petitioner's statements to the police that he was with M.S. that night, and that the jury might react negatively toward Petitioner if presented with conflicting accounts. *See Henry v. Poole*, 409 F.3d 48, 65 (2d Cir. 2005) ("[I]t is generally acknowledged that an attempt to create a false alibi constitutes evidence of the defendant's consciousness of guilt. . . . Many jurors regard a false alibi as an admission of guilt.") (internal quotation marks and citations omitted).   Furthermore, Petitioner's attorneys did not err by failing to file a notice of alibi regarding Petitioner's cell phone records, which clearly did not constitute alibi evidence.  Petitioner's defense counsels' failure to file a notice of alibi or pursue an alibi defense therefore falls within the wide range of professional assistance considered reasonable by *Strickland*.  *See*, *e.g.*, *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006) ("As a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if 'there [was] no . . . tactical justification for the course taken.'") (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (*per curiam*)). Because Petitioner cannot show his trial counsels' performance fell below objective standards of reasonableness pertaining to either obtaining a more specific date of the alleged offenses or pursuing an alibi defense, this Court recommends Petitioner's claim be **denied**.

### E. Legally Insufficient Evidence

Petitioner claims his conviction of Sodomy in the First Degree was based upon legally insufficient evidence. Pet. at p. 7.  In his Appellate Brief, he further expanded the argument that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Ex. A, Pet'r Appellate Br., at p. 9 (citing *People v. Contes*, 60 N.Y.2d 620, 621 (1983)). New York Penal Law § 130.50, as it stood at the time of Petitioner's conviction, stated the elements of Sodomy in the First Degree as the following: "A person is guilty of sodomy in the first degree

when he or she engages in deviate sexual intercourse with another person. . . who is incapable of consent by reason of being physically helpless." Petitioner argues that the prosecution failed to present sufficient evidence to prove that, as a result of M.S.'s consumption of drugs or alcohol, M.S. was physically helpless and thus incapable of consenting to deviate sexual intercourse with Petitioner. On Petitioner's direct appeal, the Third Department held that Petitioner failed to preserve for review his claim that his conviction of Sodomy in the First Degree was legally insufficient. Specifically, the court found that Petitioner failed to move to dismiss that count of the indictment on that specific ground. *People v. Decicco*, 830 N.Y.S.2d at 838 (citing *People v. Gray*, 652 N.E.2d 919 (N.Y. 1995)).

Federal Courts will not review a "question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment . . . whether the state law ground is substantive or procedural." *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A procedural default from a decision based on an independent and adequate state law ground will bar *habeas* review of a federal claim when "the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Tankleff v. Senkowski*, 135 F.3d 235, 247 (2d Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. at 735).

In holding that these claims were not preserved for appellate review, the Third Department, on Petitioner's direct appeal, decided the claims on state procedural rules independent of any federal question. The Third Department went on, however, to state that "[n]evertheless, were we to consider [Petitioner's] argument, we would find it without merit. . . . [because] the People were not required to prove that the victim's sleep was drug or alcohol induced." *People v. Decicco*, 830 N.Y.S.2d at

*-21-*

838.  Rather, evidence showed that M.S. was "asleep and awoke to find [Petitioner] sodomizing him, which was sufficient to permit the jury to conclude that the victim was physically helpless at the time of the criminal act." *Id.* at 838-39.  The bar on *habeas* review resulting from a procedural default applies where the state court issues an alternative holding addressing a procedurally defaulted claim on the merits.  *See*, *e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Galdamez v. Keane*, 394 F.3d 68, 77 (2d Cir. 2005).  Thus, the Third Department's alternative examination of the merits of Petitioner's claim does not excuse the explicit invocation of a procedural bar such that federal courts can review the claim.

A procedural bar is "adequate" for purposes of *habeas* review if it is based on a rule that is "'firmly established and regularly followed' by the state in question."  *Garcia v. Lewis*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  New York's preservation requirement – that in order to preserve an issue for appeal, the defendant must specifically focus on the alleged error such that the defendant "make[s] his or her position known to the [trial] court," *People v. Gray*, 652 N.E.2d at 921 – is firmly established and regularly followed, as shown by relevant case law.  *See*, *e.g.*, *Garvey v. Duncan*, 485 F.3d 709, 714-15 (2d Cir. 2007) ("New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error.") (citing *People v. Grey*, 652 N.E.2d at 919).  Therefore, as the state law ground relied on for this claim was independent of the federal question and adequate to support the decision of the state court, Petitioner's claim that his First Degree Sodomy conviction was legally insufficient is barred from federal *habeas* review.

As stated before, a federal court cannot review a claim that has been procedurally defaulted absent the Petitioner demonstrating cause for his default and resulting prejudice, or presenting

evidence to show that he is "actually innocent" of the crime of which he was found guilty.  Here, Petitioner does not argue cause for the default and resulting prejudice, nor does this Court see any basis in the record for such an argument.  To the extent Petitioner alleges that the procedural bar resulted from ineffective assistance of counsel, this Court finds no evidence for that claim in the record.  As examined above, this Court finds no merit in Petitioner's claims that his trial counsel provided ineffective assistance.  Furthermore, the record supports the conclusion that Petitioner's counsel actively participated throughout the trial, such as by objecting to trial testimony, extensively cross-examining and challenging the credibility of the prosecution's witnesses, and by successfully excluding bottles of prescription medications and a photograph of a nude boy from trial.  *See* Trial Tr. at pp. 209-12, 222-25, 257-58, 279-285, 289-90, & 318-23; Suppression and Sandoval Hr'g Tr. at pp. 58-61.  Petitioner has also not alleged nor established his situation as one of actual innocence or a rare case where a fundamental miscarriage of justice would occur if the Court could not adjudicate his claim.  Therefore, this Court recommends Petitioner's claim that his conviction for Sodomy in the First Degree was based on legally insufficient evidence be **denied** as procedurally barred from federal review.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims.  *See* 28 U.S.C. § 2253(c)(2) ("A

certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Date:   December 22, 2010
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-24-*